UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Criminal Case No. 07-085(RMU) |
| AUBREY SHEPARD, : | |
| Defendant. : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, respectfully submits its Memorandum in Aid of Sentencing in this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. The facts of this case are set forth in detail in the Presentence Investigation Report and summarized in the Statement of Offense submitted to the Court at the time of the defendant's entry of guilty pleas. The government adopts the statement of the facts of the case as set forth in the "Offense Conduct Section" of the Presentence Investigation Report and incorporates that section of the report by reference in this memorandum.

2. On March 29, 2007 the defendant was charged in a five count indictment with Transportation of Visual Depictions of Minors Engaging in Sexually Explicit Conduct in violation of Title 18 United States Code Section 2252(a)(1)(Count One) based on his having sent to Metropolitan Police Detective Timothy Palchak via the Internet thousands of images of child pornography; with two counts of Attempted Coercion and Enticement of a Minor in violation of Title 18 United States Code, Section 2422(b) (Counts Two and Four), based on his attempting to induce a ten year old child ("Kia") and a twelve year old child ("Amanda"), through an intermediary to

engage in unlawful sexual activity with him and with two counts of Attempted Sexual Exploitation of a Minor in violation of Title 18 Untied States Code Section 2215(a)(e) (Counts Three and Five) based on his attempts to make video recordings of the two children engaging in sexually explicit conduct.

      3.  On April 3, 2007, the defendant was arrested when he arrived at a motel in the District of Columbia, after traveling from Arkansas in order to meet the children and engage in sexual activity with them. He subsequently pled guilty before this Court on May 17, 2007 to Transportation of Visual Depictions of Minors Engaging in Sexually Explicit Conduct (Child Pornography), and to one count of Attempted Coercion and Enticement of a Minor, the minor in that count being the fictitious ten year old child.  The defendant entered the pleas pursuant to an agreement with the government in which the government agreed to dismiss the remaining counts of the Indictment at the time of sentencing, and not to charge the defendant with any additional offenses based on his conduct in this case. [1]

---

[1]  After the Indictment was returned, the defendant transported additional images of child pornography from Arkansas to the District of Columbia in his vehicle in violation of 18 U.S.C. §2252. In addition, by crossing state lines with the intent to engage in a sex act with a person under the age of twelve, which the defendant did in traveling from Arkansas to the District of Columbia in order to engage in sex acts with "Kia", the fictional ten year old, the defendant was subject to prosecution for the offense of Aggravated Sexual Abuse in violation of 118 U.S.C. 2241©. The offense is punishable by a mandatory minimum term of 30 years and a maximum term of life imprisonment.

**SENTENCING RECOMMENDATION**

    **A. The Sentencing Guidelines**

        **1**. **The Impact of Booker**

    4. In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 543 U.S. at 258. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Id.</u> at 261.

    5. In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u> at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the

continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable. Not only is a sentence within the Guideline range reasonable, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

6. In accordance with Fed. R. Crim. P. 32(i)(3)(B) and the mandate of Booker that the sentencing Court must consider the Sentencing Guidelines in imposing sentence, the Court must first determine the correct Guideline range. The applicable Guideline Range as calculated by the Presentence Investigation Report writer is 360 months to life imprisonment. In the plea agreement submitted to the Court, the parties stipulated that certain specific offense characteristics set forth in the Guidelines were applicable to this case, and further agreed that either party was free to argue for or against the applicability of any other adjustment to the Guideline range.

**2. Determining the Guideline Range**

7. The parties are in agreement that most of the Specific Offense Characteristics set forth in the Presentence Investigation Report are applicable in this case. A significant exception is §2G2.2(b)(3)(B), which we discuss further below. There is no dispute that the defendant distributed well over 600 images by means of a computer; the images involved children clearly below the age of twelve years. Moreover, as set forth in the Presentence Investigation Report and the Statement of Offense, the images included images of violent sexual abuse of children.

8. Courts repeatedly have held that sexual penetration of a young child is sadistic or violent conduct within the meaning of §2G2.2(b)(2)(4). See e.g. United States v. Johnson, 450 F.3d 831, 834 (8th Cir. 2006) (sexual penetration of a minor female by an adult male is *per se* sadistic); United

States v. Diaz, 368 F.3d 991, 992 (8th Cir. 2004) (images depicting sexual penetration of a minor girl by an adult male with his penis, a young boy performing fellatio on an adult male, an adult male preforming anal sex on a minor girl are sadistic or depictions of violence); United States v. Hall, 312 F.3d 1250,1261-63 (11th Cir. 2002) (images showing vaginal or anal penetration of a prepubescent minor are sadistic); United States v. Lyckman, 235 F3d 234, 238-39 (5th Cir. 2000) (when image shows an adult male engaging in sexual intercourse with a young girl the conduct shown is sufficiently painful, coercive, abusive and degrading to qualify as sadist or violent); United States v. Canada, 110 F.3d 260, 264 (5th Cir. 1997 )(same).

9. The parties also agreed that the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. With respect to that sentencing enhancement, the defendant has stipulated that he had sexual intercourse with his daughter when she was a child on at least one occasion and that he traveled interstate for the purpose of engaging sexually activity with a minor child. [2] The conclusion that the defendant engaged in a pattern of sexual abuse of minors is supported not only by conduct that the defendant has admitted; there are additional factual bases for an enhancement of his sentence under this provision. We have set forth those facts below in the discussion of the defendant's history and characteristics.

10. The parties did not stipulate to the applicability of U.S.S.G. §2G2.2(b)(3)(B) which provides for a five level enhancement of the base offense level where the defendant transports child pornography with the expectation that he would receive a non-pecuniary benefit in return. In the instant case the benefit would be the recipient' (the fictional intermediary)'s making arrangements

---

[2] The defendant's conduct in traveling interstate to engage in sexual activity with a minor child would be prosecutable under 18 U.S.C. §2423(b) as an offense of sexual exploitation See Commentary, U.S.S.G. S 2G2.2

for the defendant to have sex with two minor children.

    11. Based on the case law and the record in this case, the government believes that there is a factual basis upon which the Court can conclude that the defendant sent child pornography to Detective Palchak, whom he knew as "James", with the expectation that doing so would facilitate a continuing relationship with "James" who could provide him with access to the children. We acknowledge that record does not contain any explicit conversation between the defendant and Detective Palchak with respect to the defendant's sending child pornography in exchange for the "James'" arranging for the defendant to have access to the children.  Such an explicit agreement is not required, however.

    12.  The Second Circuit has held that while the enhancement for distribution of child pornography in the expectation of non-pecuniary gain may apply in absence of a *quid pro* agreement between the distributor and the recipient of the child pornography, in order for the sentencing court to apply it, the court must find that the distributor expected, rather than merely hoped, to receive something of value in return: "... the provision is implicated if the distributor expects-rather than just hopes-to receive a thing of value." United States v. Maneri, 353 F.3d 165, 170, (2nd Cir 2003). Where the defendant distributes child pornography for the purpose of enticing another person to have sex with him, the enhancement for expectation of a benefit is applicable.) United States v. Canada, 110 F.3d 260, 263 (5th Cir. 1997 )(holding that where the defendant attempted to entice a purported 13 year old male to engage in sexual acts with him, and sent child pornography to the purported minor, the sentencing court  correctly concluded that the defendant distributed the material for the purpose of enticing the minor to have sex with him and enhancement was applicable).

13. Here, the conversations between the defendant and Detective Palchak reflect that the defendant first sent a video of child pornography within minutes of his meeting Palchak on-line. Over the next several weeks he sent literally thousands of images of Palchak. In the same conversations, the defendant discussed having sex with the two minor children whom Palchak in his role as a pedophile claimed he could make available. It would be reasonable to conclude that the defendant sent the images in the expectation that "James" would reciprocate by arranging for the defendant to meet "Kia" and "Amanda".

14. In an unpublished opinion, the Fifth Circuit has upheld the district court's finding that the enhancement was applicable in a case in which the defendant contended that he had distributed child pornography without any expectation that he would receive images in return from the recipient, but rather, because he was "just being a good guy". The Court of Appeals noted that a distribution that qualifies for enhancement need not have been made "on a strict, quid pro quo basis...it is enough that an image was distributed in hope that such a gesture would facilitate a continuing relationship with the recipient. " United States v. Sistrunk, 37 Fed. Appx. 88, 2002 WL 971623 (C.A.5(La.))

15. In the instant case, the transcripts of the on-line conversations between the defendant and Detective Palchak reflect that at times when the defendant sent images of child pornography to Palchak, their conversations were about the images and sex with children in general. Intertwined with conversations about the child pornography that the defendant sent, however, also were statements by the defendant about how much he wanted to have Palchak in his role as a pedophile to arrange for the defendant to meet and have sex with "Kia" and "Amanda". As noted in the Presentence Investigation Report, in one conversation the defendant accepted thanks for sending

him child pornography, saying that it was his pleasure in light of what "James" was going to share with him, i.e. "Kia".

16. The record thus indicates that the defendant's motivation in distributing child pornography was at least in part maintaining a relationship with a pedophile whom he believed could provide him with access to minor children. Moreover, his planning and actual travel to the District of Columbia confirm that the defendant expected, rather than merely hoped, that "James" actually would make the necessary arrangements for the defendant to have sex with the minor children. The Court can reasonably conclude, as did the Presentence Investigation Report writer, that the provisions of §2G2.2(b)(3)(B) are applicable in this case.

    **B. Additional Sentencing Factors**

17. Factors to be to be considered by the Court in imposing sentence in a particular case are set forth in 18 U.S.C. § 3553. In addition to the sentencing range as determined by the Sentencing Guidelines, the Court is directed to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the need to avoid unwarranted sentencing disparity and the need to provide restitution to any victims of the offense. We address these factors below.

    **1. The Nature and Circumstances of the Offenses**

18. The defendant has entered guilty pleas to the offenses of Attempted Enticement of a Minor and Transportation of Child Pornography. In the case of the Attempted Enticement charge there is overwhelming evidence that over a period of months, he made plans to engage in a variety of sexual acts with a ten year old child and to make videotapes of her engaging in sex with him and a person whom he believed was another pedophile. From the initial conversation between the

defendant and Detective Palchak which began when Palchak responded to the defendant's message asking whether any parent was willing "to share their kid with a horney old man" the defendant expressed his desire to meet with and to sexually abuse a ten year old girl. He described in graphic detail sex acts he would perform on the child, suggesting at one point that he and "James" penetrate her vaginally and anally at the same time.

19. It is significant that even while discussing arrangements to have sex with a ten year old, the defendant raised the issue of whether "James" could provide him with access to his twelve year old daughter "Amanda". When "James" said that his daughter had not engaged in sex and likely would tell her mother if they sexually abused her, the defendant suggested rendering the child unconscious with sleeping pills.

20. It is impossible to overstate the horrific nature of the defendant's actions in this case. The facts of the offense speak for themselves. This is not a case in which the defendant engaged in an on-line fantasy with another purported pedophile. It is a case in which the defendant intended to, and attempted to, sexually abuse young children whom he believed were vulnerable and unprotected. He traveled to the District of Columbia for the express purpose of engaging in sex acts with a ten year old girl and a twelve year old girl in a hotel over a period of days. He brought with him a substance that he believed would enhance his sexual performance, sleeping pills to render one child unconscious, child pornography to show the children, and a video camera to record images of his, and "James'" sexual abuse of the children. Moreover, the defendant did not intend for his exploitation of the children to end with his sexually abusing them. According to the what he told Detective Palchak, the defendant intended to share the images of the children with an individual who in exchange would arrange for him to have sex with another twelve year old child.

21. With respect to the offense of Transportation of Child Pornography, over a period of approximately one month, the defendant sent to Detective Palchak via the Internet literally thousands of images of child pornography.[3] The images include still images and videos depicting virtually every form of sexual abuse of children. Some of the images are described in the Presentence Investigation Report. They include videos of children as young as two or three years old being vaginally and anally penetrated and performing fellatio on adult males.[4]

22. To appreciate the quantity of pornographic material that the defendant had collected, it is worth noting that 450 known child victims were identified by the National Center for Missing and Exploited Children ("NCMEC") in the material that the defendant transported to the District of Columbia. While the harm caused by the defendant's acts in distributing images of child abuse may not be as readily apparent as that caused by attempts to actually sexually abuse children, the harm is nevertheless very real. First, the defendant re-victimized children in sharing images of their abuse and degradation. The children in the images he collected, viewed and distributed are not cartoon characters; they are real children who were exploited, degraded and in some cases literally tortured in the production of the child pornography he collected and shared. They will remain victims as long as images of their abuse are collected and distributed. Since the Internet has become the distribution medium of the images the degradation of these children is permanent, continuous,

---

[3] The government has agreed not to seek an upward sentencing departure based on the number of images in this case. We submit that the number of images that the defendant transported, like the nature of the images, is nevertheless relevant as a factor for the Court's consideration in determining what sentence within the applicable sentencing Guidelines range is appropriate.

[4] The images are available for the Court's review. We are prohibited from copying the material, but should the Court wish to view it, we will bring it to chambers and retrieve it after the Court reviews it.

and impossible to eradicate.

23. In some cases, victims and/or their families have provided statements to be submitted to the courts in cases where the child's image has been identified. We are submitting several to the Court with this memorandum. [5] Their letters state far more powerfully than any submission of counsel could the continuing pain suffered by the victims when their images are viewed and distributed by individuals like the defendant who derive sexual satisfaction from watching their abuse and humiliation.

24. In addition to re-victimizing the children whose images he collected and distributed, the defendant's acts served to encourage the production of child pornography and the sexual abuse of the children used to create it. By collecting child pornography, the defendant and others like him provide an incentive for its production. The Ninth Circuit has articulated that "commercial child pornography" (images obtained from the Internet, just like those possessed and distributed by this defendant) is an industry targeted by Congress; moreover, the most effective method of eradicating the industry is to punish the ultimate consumer. United States v. Adams, 343 F.3d 1024, 1034 (9th Cir. 2003).

> Th[e] legislative history leads us to three observations: (1) Congress determined that child pornography is a multi-million dollar industry in which sexually explicit depictions of children are bought, sold, and traded interstate; (2) Congress decided to "stamp out" the market for child pornography by criminalizing the production, distribution, receipt, *and possession* of child pornography; and (3) Congress thought it could strike a blow to the industry by proscribing possession of child pornography "because those who possess and view child pornography encourage its continual

---

[5] Pursuant to 18 U.S.C. §3509 (d)(2) we are filing under seal two copies of each letter. One copy has identifying information concerning the identity of the victims. The second copy has been redacted to remove the identifying information. In accordance with the statute, we ask that only the redacted versions of the letters be placed in the public record and that the unredacted versions be maintained under seal.

production and distribution."

Id. at 1032, citing 136 Cong. Rec. at S4730 (emphasis in original).

25. In taking into account the nature and circumstances of the offenses for which the defendant will be sentenced by the Court, we urge the Court to consider that his acts evidenced a willingness to abuse and degrade two children whom the defendant clearly believed existed; they caused additional suffering to victims of child pornography, and they encouraged the continued production of child pornography.

**2. History and Characteristics of the Defendant**

26. The defendant is 64 years old and has no criminal record. He was employed at the time of his arrest in the instant case. He is also a pedophile who sexually abused children in his family, including his daughter, over a period of years. The defendant has admitted fondling his daughter beginning when she was about eight years old and he contends that he penetrated her vaginally only once. His daughter, however, describes sexual abuse by the defendant that began when she was a young child and continued for years. We are submitting to the Court a letter she wrote describing the defendant's abuse. The defendant's sexual abuse of children has not been limited to his daughter. As letters from other family members make clear, he abused or attempted to abuse other children to whom he had access. [6]

---

[6] Although these letters were written by persons who are now adults, the contents describe acts of sexual abuse committed against them when they were children. Accordingly, as with the letters written by the child pornography victims, we will file them under seal and request that they be maintained under seal. We have not redacted to documents to conceal the identity of persons who wrote the letters, and ask therefore that the letters remain under seal.

27. Nor is the defendant's exploitation of children limited to acts that occurred in the past and those underlying the charges in the instant case. Even while he was attempting to arrange to travel to the District of Columbia to have sex with children, the defendant was engaging in on-line conversations with a child, or a person whom he believed was a child, and trying to persuade the child to have sex with him. On March 14, 2007, Detective Palchak telephoned the defendant and recorded the conversation.[7] The defendant told Palchak that as they were talking, he was chatting on-line with "Holly" whom he described as a "sweet little girl" whom he met in an Internet chat room and thought was eight years old . At several points in the conversation, the defendant paused to type on his computer and the sound of typing can be heard on the recording. The defendant described to Palchak how he assumed the identity of a young girl "Kate" in order to meet other young girls on-line, and that "Kate" claimed to be having sex with her father. The defendant would then assume the role of the father and talk to the persons whom "Kate" met on line, including "Holly", about how she would enjoy sex.

28. In the same conversation, the defendant told Palchak that he had sexually aroused "Holly" to orgasm while they were talking on line, and that he had suggested to "Holly" that they meet in person. "Holly", who lived near Cleveland, Ohio, agreed, and the defendant planned to travel there during the summer when school was not in session to meet her and have sex with her. When Palchak asked whether the defendant thought that someone might be pretending to be the child ("You think someone is f...... .with you?"), the defendant assured him that "Holly" was a real child.

---

[7] A copy of the audio tape was provided to defense counsel in discovery. If the Court wishes, we will make a copy available to the Court for it's review.

29. His acts over a period of decades, from his sexual abuse of his daughter as a young child to his recent conduct in using the Internet to meet and sexually abuse young girls, demonstrate clearly that the defendant has, and can be expected to continue to, sexually abuse and exploit children for as long as he has access to them.

### 3. Need for the Sentence to be Imposed

30. Consideration of the factors set forth in Section 3553(a)(4) lead to the conclusion that a sentence of a substantial period of incarceration is warranted in this case. Only a lengthy sentence imprisonment is adequate to reflect the seriousness of offenses involving the abuse and exploitation of children, and to deter others who would use the Internet to prey on children. Most importantly, only removing the defendant from the community will adequately protect the community from him. The defendant is a sexual predator who preys on children. His actions in the instant case, as well as his history of sexually abusing young children make clear that the defendant will use every opportunity available to him to gain access to vulnerable children, whether through family relationships, or the Internet, in order to engage in sex with them.

31. Short of incarceration, there is no realistic means of ensuring that the defendant will not come into contact with a child, whether in person or via the Internet. We are aware that the defendant now is 64 years old and faces a mandatory minimum sentence of ten years incarceration. The sentence under the advisory Sentence Guidelines is significantly greater,[8] and we urge the Court to impose a Guidelines sentence in this case. Nothing in the defendant's history suggests that he will

---

[8] If the Court adopts the conclusion of the Presentence Investigation Report writer that the enhancement set forth in U.S.S.G. §2G2.(b)(3)(B) is applicable, the defendant's Guidelines range is 360 months to life imprisonment. If the Court were to find that the provision was not applicable, the Guidelines range would be 262-327 months imprisonment.

not continue to pose a threat to the community, and in particular to children, even as he ages. He has demonstrated that he willing to go to considerable lengths now to ensure his ability to engage in sexual intercourse with children, and his prior history includes a history of fondling children as well. Most obviously, he remains capable of collecting and distributing child pornography indefinitely.

32. A sentence within the applicable advisory Sentencing Guidelines range would serve to avoid unwarranted sentencing disparities among defendants who have committed similar offenses. It also would be an appropriate sentence in this particular case for the following reasons. The Guidelines calculations in this case take into account the facts of the case that are most significant to sentencing, for example, the young age of the child whom the defendant attempted to sexually abuse, his use of the Internet to make arrangements to gain access to her, as well as to distribute child pornography, the volume and nature of the child pornography he distributed and his own history of sexually abusing children. At the same time a Guidelines sentence takes into account the defendant's lack of prior criminal convictions and his willingness to enter an early guilty plea in this case. The Guidelines also provide for a substantial period of incarceration, which for the reasons set forth previously, is warranted and necessary in this case.

33. In addition to a sentence of a substantial period of incarceration, the government recommends that the Court impose a term of lifetime supervised release with conditions to include the special conditions described in paragraph 86 of the Presentence Investigation Report, in particular, the conditions relating to restrictions on the defendant's contacts with children and access to the Internet. Given the nature of the offenses that the defendant has committed and his history,

Case 1:07-cr-00085-RMU    Document 27    Filed 08/14/2007    Page 16 of 16

such a term of supervised release is appropriate and necessary to ensure that the defendant does not again prey on children after his release from incarceration.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        United States Attorney

BY:        /s/
        PATRICIA STEWART
        Assistant United States Attorney
        D.C. Bar Number 358910
        555 4th Street, N.W. Room 4247
        Washington, D.C. 20350
        (202)514-7064
        Patricia.Stewart@usdoj.gov

16