UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Criminal Case No. 07-085(RMU) |
| AUBREY SHEPARD, : | |
| Defendant. : | |

## GOVERNMENT'S REPLY TO DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT AND MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, respectfully submits its Reply to the Defendant's Objections to Presentence Report and Memorandum in Aid of Sentencing. We cite below to the specific portions of the defendant's submission to which we are responding.

**BACKGROUND**

**Aubrey Lynn Shepard:**

**Sexual Abuse of His Relatives**

Defendant characterizes his sexual abuse of relatives as involving a request as to whether he could touch them, followed "on some occasions" with "inappropriate touching". Defendant's Objections to Presentence Report and Memorandum in Aid of Sentencing ("Defendant's Memorandum") at 3. Defendant minimizes these incidents by asserting that when the minor objected, the attempted abuse stopped and was not repeated. He ignores that by his own admissions, he engaged in vaginal intercourse, not merely inappropriate touching, with his daughter. By her account, the abuse took place over a period of years. In addition, as set forth in a letter written by the defendant's nephew, the defendant sexually abused that child in a variety of ways over a period

of time.

**The Presentence Report**

**Offense Level: Enhancement pursuant to U.S.S.G.§ 2G2.2(b)(4)**

While conceding that the four point enhancement based on the defendant's distribution of material that portrays sadistic or masochistic conduct or other depictions of violence is applicable under the prevailing legal authority, the defendant suggests that the enhancement is not really implicated in his case because he does not "enjoy the infliction of pain" or "take any delight in physical or mentally cruelty". Rather, he claims, the opposite is true as evidenced by the defendant's expressing disapproval of an incident in which a child is being penetrated by an adult male. Defendant's Memorandum at 5. Moreover, the defendant apparently was unaware that a approximately four-year old child who was being anally sodomized was crying hysterically because the sound on his computer did not work. Id. at n. 2

The defendant's claims are disingenuous at best. Whether or not he could hear a young girl screaming as she was being sodomized, he certainly could see visual evidence that she was, and he could assume that the experience was "an infliction of pain" on the child. While he did comment once that "dad is too ruff with her" with respect to a video depiction of a child who appeared to be approximately 18 months to two years old being forcefully penetrated by an adult, the comment stands in noticeable isolation from his silence with respect to the other images he sent to Detective Palchak, some of which are described in the factual proffer submitted to the Court at the time of the plea in this case.

More significantly, the application of the enhancement is not dependent upon the defendant's reaction to the images that he collected and distributed. The enhancement is appropriate because

2

children have been subjected to violence, including sexual acts that are necessarily painful to them, in order to create those images. It follows that defendants who distribute such images should be subjected to more severe punishment than those who distribute images in which the child was not subjected to such violence.

Should the Court have any question as to whether to apply the enhancement based on the images that the defendant collected and distributed in this case, the Court of course can view the images and make an independent determination of whether the enhancement is applicable.

**Enhancement pursuant to U.S.S.G. § 2G2.2(b)(5).**

The defendant stipulated to two incidents that support the application of the enhancement for pattern of activity involving the sexual abuse or exploitation of a minor: the sexual abuse of his daughter and an incident in which he traveled to South Dakota in order to have sex with a 12-year old girl whom he met on-line.[1] In fact, there is evidence of other acts of sexual abuse and exploitation of minors. The Court has received letters from several relatives who recount how he molested them as children, and indeed the defendant concedes at least some of the incidents did take place See Defendant's Memorandum at 3. In addition, as noted in the Government's Memorandum in Aid of Sentencing, while communicating with Detective Palchak, the defendant also was communicating on-line with an individual whom he believed was an eight-year old girl and

---

[1] In his Memorandum the defendant minimizes his role in this incident also. He states that that after traveling to South Dakota to meet a purported 12-year old girl, he "became scared on the trip" and returned home. Defendant's memorandum at 6. In a video taped statement given after his arrest in this case, the defendant stated that he arranged to meet "Jessica", an 11-year old girl and her father at a motel and when he did not find them there he thought of going to her home, since she gave him her home address, but he became scared to go there. The following day, however, he did search for her home but could not find it, so he returned home. Moreover, the reason his communications with the girl were not resumed after the trip was that she did not respond to the defendant's efforts to contact her on-line after he returned home.

attempting to entice the child into engaging in sex with him, conduct which would be prosecutable as an act of child exploitation under federal law and therefore also would support application of the enhancement.

**Relationship Between Defendant and Detective Palchak**

The defendant cites to what he describes as a "special bond" between himself and Detective Timothy Palchak, the Metropolitan Police detective who posed on-line as a pedophile in this case. The defendant suggests that he was an "easy target" for an MPD sting operation because of his inability to cope socially. Defendant's Memorandum at 7. Defendant also notes that "it was Detective Palchak who first proposed exchanging an image, which was a purported images of himself and 10-year old Kia in a hotel room" .Id.  To the extent that the defendant is suggesting that but for his loneliness and obsession he would not have caught up in a police "sting operation", Defendant's Memorandum at 7, and that would not have sent child pornography via the Internet absent a suggestion from Palchak that he do so,  the evidence in this case proves otherwise.

Two facts bear noting: first, this case arose after the defendant posted a message on the Internet bulletin board asking whether "Any parent out there willing to share their kid with a horny old man [?]".  That act makes clear that at the time Detective Palchak came into contact with him, rather than being the socially  inept "easy  target" of an experienced detective's "sting operation", the defendant was a dangerous predator who was actively seeking access to children whom he could sexually abuse.

Second, to the extent that the defendant suggests that Detective Palchak first suggested an exchange of child pornography, the transcript attached to the Defendant's Memorandum as Exhibit One makes clear that the defendant sent child pornography without  any suggestion that he do so by

Palchak. During a discussion of Palchak in his role as a pedophile's having access to a ten year old, after the defendant said that he would like to hear more about sex with the child, ("...I would like to hear more about u fukn her anyway" (Transcript 2/28/07 at 8:01:59) Palchak asked whether the defendant would like to see a picture of the girl, and then sent him a picture purporting to be the child in a hotel room with him. (Transcript 2/28/07 at 8:02-8:03) The photograph was of a ten year-old girl in a bathing suit and is not in any manner pornographic. Palchak did not ask that the defendant send him any photographs in return.

The defendant first sent child pornography to Palchak approximately six minutes later, after a discussion about child pornography sites and whether either of them was a police officer. The defendant stated "yes, I love those little pussy shots. I got a vid of a little girl fuckn a man I think you would like name is linda want me to send?" (Transcript 2/28/07 at 8:10:33). When Palchak indicated he would like to see it, the defendant made the first transfer of child pornography.

**The Defendant and 18 U.S.C. § 3553(a) Factors**

The defendant urges the Court to impose a sentence no greater than the ten year mandatory minimum sentence in this case based on the defendant's age and the likelihood that he will not re-offend. According to the defendant, if he is sentenced to the mandated term of 120 months incarceration, he will be 74 years old when released and his age makes it unlikely that he will commit another sex offense.[2] We disagree.

---

[2] Assuming that the defendant receives good time credit, he would serve approximately eight and one half years of a ten year sentence.

There is no basis to conclude that the defendant's age would preclude him from again sexually abusing or exploiting children. His actions in this case demonstrate that at 64 years of age he was willing to drive hundreds of miles, use "enhancers" and attempt to obtain Viagra in order to engage in sexual intercourse with young children. There is no reason to believe that age alone would prevent him from engaging in at least fondling children as he has done in the past. And of course he could collect and distribute child pornography at any age.

The defendant also cites to statistics and studies that he contends support his position that with the benefit of sex offender treatment, he is likely not to re-offend. We agree that sex offender treatment is useful in many cases, and that it may be of benefit to the defendant. The statistics that the defendant cites, however, are just that. They are numbers based on based on studies of other individuals from which the defendant asks the Court to draw conclusions about him and to predict his future conduct. In this case, however, the Court has a more accurate predictor of the defendant's future conduct: his own past conduct which has involved the abuse and exploitation of children over a period of decades.

Finally, the defendant's potential for rehabilitation is but one factor in the determination of the appropriate sentence in this case. Even if the Court were to determine that the defendant, notwithstanding his past conduct and his conduct in this case, is unlikely to pose any threat to the community after treatment, the need to deter and punish his conduct support the imposition of a

lengthy period of incarceration. Accordingly, we ask that the Court impose a sentence that is appropriate to reflect the nature and seriousness of the defendant's conduct in this case.

                                      Respectfully submitted,

                                      JEFFREY A. TAYLOR
                                      United States Attorney

BY:                 /s/
                                      PATRICIA STEWART
                                      Assistant United States Attorney
                                      D.C. Bar Number 358910
                                      555 4th Street, N.W. Room 4247
                                      Washington, D.C. 20350
                                      (202)514-7064
                                      Patricia.Stewart@usdoj.gov