**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                              |     |                        |
|------------------------------|-----|------------------------|
|                              | )   |                        |
| **UNITED STATES OF AMERICA** | )   |                        |
|                              | )   |                        |
| **vs.**                      | )   | **Cr. No. 07-085 (RMU)** |
|                              | )   |                        |
| **AUBREY LYNN SHEPARD,**     | )   |                        |
|                              | )   |                        |
| **Defendant.**               | )   |                        |
|                              | )   |                        |

**DEFENDANT AUBREY LYNN SHEPARD'S**
**SUPPLEMENT TO MEMORANDUM IN AID OF SENTENCING**

Mr. Aubrey Lynn Shepard, by his attorney, hereby respectfully submits this Supplement to his Memorandum In Aid of Sentencing. Attached hereto is a psychiatric report from an evaluation of Mr. Shepard conducted by Dr. Dwight T. Colley. Dr. Colley is a Licensed Clinical Psychologist and a Certified Sex Offender Treatment Provider. The defense anticipates utilizing the attached report at the sentencing in this matter.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____/S/_____
Jonathan S. Jeffress
Counsel for Aubrey L. Shepard
Assistant Federal Public Defenders
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500, ex. 134

Sep 10 07 08:58a      Dwight Colley                          4342956445                    p.2

# Dwight T. Colley, PsyD

*Virginia Licensed Clinical Psychologist*
*Virginia Certified Sex Offender Treatment Provider*

175 South Pantops Drive
Charlottesville, VA 22911

Tel. (434) 295-6445
Fax (434) 296-1195

September 6, 2007

**Psychosexual Evaluation:** Aubrey L. Shepard

## Reason for Referral:

Aubrey L. Shepard, a 64-year-old Caucasian male, was referred by his attorney for a presentence sex offender assessment to ascertain his current mental status, his possible risk of sexually re-offending in the community, and to make specific treatment recommendations, if any. This assessment stems from his guilty plea to Transporting of visual depictions of minors engaging in sexually explicit conduct and Attempted coercion and enticement of a minor.

## Collateral Information Reviewed:

United States District Court for the District of Columbia, presentence investigation report regarding Aubrey Lynn Shepard, dated August 10, 2007
Metropolitan Police Department investigations report number 042271
Transcript of Internet chats between "Lynn" and "James," totaling 84 pages

## Assessment Instruments Administered:

Clinical Interview
Mental Status Examination
Symbols Digit Modalities Test
Comprehensive Trails Making Test
Millon Clinical Multiaxial Inventory-III
Jesness Inventory Coolidge Assessment Battery
Sexual Adjustment Inventory
Wilson Sexual Fantasy Questionnaire
Abel and Becker Cognitive Distortions Inventory

## Background Information:

At the beginning of the interview, Mr. Shepard was advised as to the nature of the evaluation and the fact none of the information provided by him was to be considered confidential. He indicated he understood and appreciated the nature and purpose of the evaluation, and stated his willingness to proceed.

Mr. Shepard's formative years were previously set out in the referenced Presentence report. The interview did not develop anything substantially different, other than he provided more detail which when found to have a bearing on this assessment is detailed.

**Psychosexual Assessment Report**
**Aubrey L. Shepard**
**Page 2**

He went on to advise he has never been seriously ill; however he reported several hospitalizations. His first hospitalization occurred at the age of 17, as a result of a broken collarbone. Between the ages of 40 and the present time he has been hospitalized for more than 24 hours as a result of urinary tract problems, surgery on his right elbow, carpal tunnel surgery, and as a result of a swollen prostate gland that has not been resolved. He denies ever having been knocked unconscious or having received a significant blow to the head

He further reported that between the ages of 11 and 12 he was subjected to being forced to perform oral sex on two 17/18 year old males who lived next door. He stated he was forced to perform oral sex on these older teenagers approximately 12 times during the course of approximately a year. He explained when these teenagers saw him outside and wanted him to perform sex upon them they would say, "It's time," and take him to an unobserved spot where he would have to perform oral sex upon them. He never told anyone about this abuse due to his own shame and the fact he was threatened by these older teenagers with a beating if he told anyone. The abuse ended when the teenagers moved from the neighborhood.

**Mental Status Examination and Estimate of Intelligence:**

**Symbol Digit Modalities Test**

Mr. Shepard was given the Symbols Digit Modalities Test in order to screen for any possible organic damage that would possibly interfere with his judgment and decision making. The Symbol Digit Modalities Test is a measure for screening cerebral dysfunction. Because the Symbol Digit Modalities Test uses symbols and numbers, both universally written language symbols, it is a culture-free instrument. The process of substituting numbers for geometric designs measures the efficiency of many different cerebral mechanisms and permits testing the integration of global mental processes. A score of 1.5 standard deviations below the mean for a particular age/education group has correctly identified 86% of individuals with chronic brain disorders. The accuracy of a brain disorder classification increases as scores move lower from the group mean. Mr. Shepard, on this instrument, scored within the norm for his age/education group.

**Comprehensive Trail-Making Test**

The Comprehensive Trail-Making Test was used to further assess the possible presence of any organic brain dysfunction. The Comprehensive Trail-Making Test is an instrument designed to address five visual search and sequencing tasks that are heavily influenced by attention, concentration, resistance to distraction, and cognitive flexibility (set shifting). These four abilities are highly vulnerable to brain injury of differing etiologies, to include injuries related to frontal lobe activation that is essential for one's

**Psychosexual Assessment Report**
**Aubrey L. Shepard**
**Page 3**

executive (decision making) function. Numerous research studies have concluded that trail-making is one of the best available measures of general brain functions. On this instrument, Mr. Shepard's Comprehensive Trail-Making Test composite score was at the 77th percentile, indicating a low probability as to any impaired score in all categories, as well as an overall conclusion. His scores on the subtest tests measuring his "set shifting" ability, which is his ability to change over to another behavior once he has initiated a behavior, were also in the normal range.

Mr. Shepard was further observed to be a well-nourished adult male who was well groomed, and was observed to be appropriately dressed for the occasion. His speech was normal in rate, volume, production, associations, articulations, and spontaneity. He was animated and maintained appropriate eye contact throughout the interview. He demonstrated a normal range of emotional expression during the course of the interview. It was clear through out the interview he did not attempt to portray himself as anyone other than who he is. There were no indications he was delusional or hallucinating. Throughout the interview, it was felt he was being open about all aspects of his life that were discussed.

He presented as being alert and oriented as to time, place and person. He displayed good insight as to how the events of the past would influence his future life. His memory of recent and past events appeared intact. When questioned as to his thoughts regarding suicide, he stated that in the past he had thought about suicide during times of stress, but never formulated any plans or made any attempts to kill himself. He spoke about his life in a future oriented fashion.

Further, he was found to be of average intellectual functioning and possessed an adequate fund of knowledge about the normal activities of life. During the interview, he was found to be attentive and engaged in the process. There were no obvious signs of psychosis or gross organic dysfunction. His judgment as to the day to day functioning in life was considered to be adequate. The interview found no clear indications that he maintains inappropriate ways of feeling, thinking, relating, and behaving towards the world about him.

**Interpretation of Assessment Instruments Administered:**

This section is divided into three portions for easier consideration of the data used in this evaluation, 1) Emotional and personality testing and 2) Assessment of sexual interest, 3) and 3) Risk factor analysis.

**Emotional and Personality Testing:**

**Psychosexual Assessment Report**
**Aubrey L. Shepard**
**Page 4**

## Millon Multiaxial Clinical Inventory-III

The Millon Clinical Multiaxial Inventory-III and the Jesness Inventory are self-report psychological inventories intended to explore three aspects of an individual's psychological make-up: personality, possibility of a severe personality disorder, and clinical syndromes. These two instruments contain validity scales; commonly referred to as "Lie scales" designed to determine if the individual is attempting to present an unrealistic positive image of themselves or is attempting to randomly respond to the items.

The responses provided by Mr. Shepard to the items in these instruments produced valid scales; therefore the resulting profile and interpretation is considered to be accurate.

An analysis of his overall profile does not indicate any significant generalized delinquent tendencies, nor does he show an underlying predisposition to break social rules. His level of social maladjustment is in the normal range, indicating he has an awareness of appropriate social expectations and norms. He is seen as a socially mature individual with adequate coping skills. There do not appear to be any significant or authority conflicts; hence it appears he can relate to authority figures. In sum he does not have a value system typical of criminal populations.

He is seen as having an overly flexible cognitive style with him often changing his mind, being indecisive, and easily being swayed by others. That being said, he does not appear to have any significant obsessive ruminations and worries. His thinking is goal-directed and logical without signs of mental confusion. There are no indications of substance abuse

Average levels of automatic unconscious repression are seen in testing with him having adequate guards against too easily being overcome by feelings. Additionally he is seen as having average tendencies to consciously deny problems and suppress disturbing thoughts. His insight and ability to effectively deal with repeating dynamics in constructive ways are likely to be fair. He has average tendencies to become depressed and withdraw socially. This does not appear to be a key trigger to acting out behavior.

Very high levels of social discomfort and self-consciousness are seen in his profile. This anxiety may adversely influence his behavior and be connected to his acting out.

His responses show him to be an extremely odd, socially peculiar, eccentric man with very poor social skills. He in all likelihood has had little success forming relationships as his unusual behaviors and thought patterns make it extremely difficult for others to relate to him. Perhaps because of this above average needs for affection, love and intimacy are seen. Furthermore, he feels a need to be mildly dependent on others, though he can at

**Psychosexual Assessment Report**
**Aubrey L. Shepard**
**Page 5**

times be independent. He has an exceptional feeling of being different, estranged and unusual. He is experiencing average levels of anger which do not seem to particularly be associated with criminal behavior.

Average levels of interpersonal suspiciousness were described. He is very trusting and may not be suspicious enough of others. He could easily be taken advantage of by dependent or predatory individuals.

He exhibits a stable sense of identity and generally feels very able to affect and cope with his world. He believes that he can tolerate stress and effectively deal with the people and problems in his life. At this time, he feels so unable to cope that he withdraws into fantasy. In sum, he tends to be a negative, distrustful man who acts out on underlying emotional problems. While his emotional conflicts often center on unmet dependency needs, he is reluctant to let others close out of fear of control and rejection which can cause more anxiety and lead to erratic acting out.

**The Coolidge Assessment Battery**

The Coolidge Assessment Battery (CAB) is designed to accomplished a threefold purpose: (1) to assess clinical symptoms that comprise Axis I coded disorders of the DSM-IV-TM; (2) to evaluate neuropsychological functioning (including language functions, memory and concentration, and neurosomatic symptoms related to brain dysfunction); and (3) to assess personality disorders that comprises Axis II of the DSM-IV-TM. The CAB consists of 42 scales which are organized into eight distinct sections:

- Axis I disorders
- Personality disorders
- Neuropsychological dysfunctions
- Executive function of the frontal lobes
- Personality change due to medical conditions
- Hostility scales to include anger, dangerousness and impulsiveness
- Normative scales to include apathy, emotional lability, indecisiveness, maladjustment, and introversion-extraversion
- Validity scales to include answer choice frequency, random responding, tendency to look good or bad, and tendency to deny blatant pathology

On this instrument Mr. Shepard was seen to be an extremely introverted man and as a result he suffers from significant a social phobia which tends to increase his withdrawal propensity. As a result of these social traits in all likelihood he is experiencing a long-term depressive episode, not related to the instant offense. He is further seen as being hypersensitive to rejection and embarrasses easily. He fears new activities, feels awkward around other people, and feels inferior, all of which tend to lead him to avoid

**Psychosexual Assessment Report**
**Aubrey L. Shepard**
**Page 6**

social interactions. It appears he has few or no friends as a result of his extreme shyness. There are no indications of significant neurological thought disorders, nor were there any indications of anger or hostility.

**Assessment of Sexual Interest:**

**Sexual Adjustment Inventory**

The Sexual Adjustment Inventory is designed to identify sexually deviate and paraphiliac behaviors in people involved in, or convicted of sexual offenses. The instrument contains two validity scales, Test Item Truthfulness and Sex Item Truthfulness. Those involved in sexual offenses typically are aware of the serious consequences associated with being involved in such offense(s) and often attempt to minimize their problems, become defensive or even be outright untruthful. These two "truthfulness" scales make a more accurate sex offender assessment possible by incorporating the truthfulness of their response into the overall evaluation.

Based on Mr. Shepard's responses to the non-sex items on this instrument, which were seen as valid, accurate and truthful, the resulting non-sex profile showed him to have one problem on the six scales measured by this instrument: Alcohol, Drug, Violence, Antisocial, Distress, and Judgment, that being his Judgment scale. His Judgment scale is seen to be in the severe problem risk range. Judgment, reasoning abilities and comprehension appear to be impaired. He attends to the concrete or practical aspects of situations and may have cognitive problems.

Furthermore, based his responses to the sex related items on this instrument, which were seen as valid, accurate and truthful, the resulting sex related profile showed him to have three problematic scales out of the five scales measured d by this instrument: Sexual Adjustment, Child Molest, Sexual Assault, Incest, and Exhibitionism, those being the Sexual Adjustment, Child Molest and Incest scales. His Sexual Adjustment scale was seen to be in the severe problem risk range, indicating this man has a severe problem with his sexual adjustment, as he finds it distressing, frustrating and unsatisfying. Serious or unusual sexual adjustment problems of an undefined nature exist. His Child Molest scale is also seen to be in the severe problem area, as possible child molest behavior has been reported. Additionally, his Incest scale was found to be in the problem risk range. His responses indicate he may have participated in incest behavior.

**Wilson Sexual Fantasy Questionnaire**

The Wilson Sexual Fantasy Questionnaire was designed to quantify the extent a person fantasies about four themes related to sexuality: 1) Exploratory (engaging in group and mate swapping sex), 2) Intimate (sexual relations with loved ones), 3) Impersonal (sexual

**Psychosexual Assessment Report**
**Aubrey L. Shepard**
**Page 7**

relations with strangers, use of nonhuman sex objects, i.e., pornography and 4) Sado-
masochistic (sexual relations involving the use of force and/or humiliation). On this
instrument Mr. Shepard was found to have significant fantasies related to Impersonal
sexual themes and low fantasies regarding Intimate, with no interest in Exploratory or
Sado-masochistic themes, in that order. Such a finding generally indicates a fear of
relationships, sexual and otherwise.

**Able and Becker Cognitions Scale**

Mr. Shepard's responses to the statements on this instrument tend to indicate he in all
likelihood uses cognitive distortions when thinking about having sex with a child. A
"cognitive distortion" is a defense mechanisms that functions to alter or "disguise" an
event or behavior that would be unacceptable in a nondistorted form. Such a finding
indicates he is not attempting to justify any sexual behavior with children in his own
mind.

**Summary and Conclusions:**

**Diagnosis:**

| | |
|---|---|
| Axis I | Depressive Disorder, Chronic |
| | Social Phobia |
| | Pedophilia, nonexclusive type |
| Axis II | Schizoid Personality Disorder |
| Axis III | None known |

Clearly Mr. Shepard's inappropriate sexual behavior may have its roots in the early
sexual trauma in his life, which occurred during a critical period during his psychosexual
development. This twist in his sexual development that was not of his own making, that
being the sexual abuse he suffered at the hands of two older teenage males.

Mr. Shepard's inappropriate proposed sexual behavior with the "victim" in this matter
appears to be the result of what is termed a "repetition compulsion," that is an
unconscious need to re-create an earlier state of things during which time they felt out of
control, in this case the situation was the sexual abuse at the hands of the teenagers from
next door when he was 11/12-years-old, so that he can assert some control, at this time.
This is an impulse to re-enact a traumatic emotional experiences from early life,
independent of any benefit, or detriment which may be derived from so doing. It
represents an ongoing attempt to heal the self, albeit one with generally disastrous
results. The cycle is brought about by stress and repeats itself because the person knows
no other way of preventing themselves from feeling tiny or immaterial, the same way
they did at the time of the original traumatic event. In the case of this man, the traumatic
emotional experience referred to here was the sexual abuse by the two teenagers next

**Psychosexual Assessment Report**
**Aubrey L. Shepard**
**Page 8**

door, over an extended period of time. The age of the victim, in a repetition compulsion offense is generally, as in this case when the offense behavior first started, the age the individual was at the time of their own initial traumatic experience.

It is a common phenomenon for one under stress to engage in an unconscious bout of repetition compulsion. As has been clearly demonstrated by all three of the emotional and personality instruments used to the course of this evaluation, Mr. Shepard is suffering from social skill issues. These issues are a result him not feeling in control of his world at times. As a result of him not feeling in control, he becomes distrustful, therefore the world is seen as unsafe. The sexual behavior involved here is in all likelihood an attempt to gain some dominion over his current feelings of being immaterial and inadequate, the same way he felt during his own abuse.

It may be that the most useful way of understanding traumatic reenactment is through the language of drama. Shakespeare told us that the whole world is our stage, and with behavioral reenactments we see this in action. We reenact our past everywhere, unconsciously and secretly hoping someone will give us a different script, a different outcome, depending on how damaging our experience(s) has been. The cure is this case is the disease.

It is clear from the transcripts of the "chats," Mr. Shepard developed what he felt to be a close relationship with "James." Such a relationship was new to him; hence he did not know how to handle it. Therefore in order to ensure the continuation of the relationship he attempted to fulfill what he felt were the man's desires. There's nothing in this man's emotional and personality makeup, or his history that would suggest he is not amenable to sex offender treatment, which he without a doubt needs.

Another consideration for Mr. Shepard's potential for future sexual recidivism is his age. In the most complete study[1] done concerning age and sexual recidivism, Dr. Karl Hanson found the recidivism rate for the incest offenders was generally low (less than 10%) except for the incest offenders in the 18 to 24 age group who showed a much higher recidivism rate (30.7%). There were very few recidivists among the sexual offenders released after age 60 (3.8%). None of the incest offenders or rapists who were over 60 at time of release recidivated. Attached as an addendum is a graph depicting Dr. Hanson's findings.

Dwight T. Colley, PsyD
Virginia Licensed Clinical Psychologist
Virginia Certified Sex Offender Treatment Provider

[1]Hanson, R.K. (2001).Age and Sexual Recidivism. Dept. Solicitor General of Canada

Sep 10 07 09:02a     Dwight Colley                 4342956445              p.10

Psychosexual Assessment Report
Aubrey L. Shepard
Page 9

Recidivism Rates by Age Category

