UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>AUBREY LYNN SHEPARD,<br><br>*Defendant*. | Criminal Action No. 07-85 (RDM) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Aubrey Lynn Shepard's emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Dkt. 54. Although the motion presents a close question given Shepard's advanced age and array of health issues, the Court is unpersuaded that "extraordinary and compelling reasons warrant" Shepard's release and, in any event, concludes that the sentencing factors set forth in 18 U.S.C. § 3553(a) require that he remain incarcerated for the time being. The Court will, therefore, **DENY** the motion.

## I. BACKGROUND

In 2007, Shepard pled guilty to one count of Transportation of Visual Depictions of Minors Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(1), and one count of Attempted Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b). According to the statement of offense, over the course of a month in early 2007, Shepard communicated online from his home in Arkansas with a detective in Washington, D.C., who was posing as a child sex trafficker. Dkt. 17 at 4–8. In these conversations, Shepard and the detective made plans for Shepard, who was then 63 years old, to travel to the District of Columbia to sexually abuse children. *Id.* During their online chats, Shepard also shared roughly

sixty movie files and seventy images of children as young as 4-months-old "engaged in various explicit sexual acts with adult men and women." *Id.* at 7–8.  On April 3, 2007, Shepard arrived at a hotel in the District of Columbia and was arrested.  *Id.* at 8.  In Shepard's car, the police discovered a video camera and videotapes, lubricants, sleeping pills, various fruit drinks, stuffed animals, and DVDs containing approximately 144 movie files and over 1,900 images of child pornography.  *Id.*  After his arrest, Shepard confessed his crimes.  *Id.* at 9.  He also confessed that, decades earlier, he had sexually assaulted his daughter when she was younger than 12.  *Id.*  In the presentence investigation report, Shepard's daughter recounted an extended period of abuse from her childhood, and she also indicated that Shepard had abused other family members.  *See* Dkt. 59 at 7–8.

On October 18, 2007, Judge Ricardo Urbina sentenced Shepard, who was then 64 years old, to thirty years in prison.  Dkt. 51 at 29.  Judge Urbina applied an offense level of 39 under the sentencing guidelines, which carried a sentencing range of 262 to 327 months, but he found that range to be "inadequate" given the severity of the crime.  *Id.* at 27.  In announcing the sentence, Judge Urbina stated that Shepard was the "the worst excuse for a human being that [he] . . . [had] ever seen in [his] 26 years on the bench" and that he thus did not "have much faith in the prospects of rehabilitation" in Shepard's case.  *Id.* at 27–28.

On January 8, 2020, Shepard moved for compassionate release, based primarily on risks associated with the COVID-19 pandemic.  Dkt. 54.  At the time of his motion, he had served approximately 13 years and 8 months of his sentence.  *Id.* at 6.  Mr. Shepard is now 77 years old and suffers from several health conditions that he claimed increased his risk of death or grave illness if he were to contract COVID-19.  *Id.* at 3.  The government opposed the motion, Dkt. 59, and Shepard filed a reply, Dkt. 61.  The parties then filed several supplemental notices and

responses related to a prison psychologist's opinion that Shepard would be a candidate for "outpatient treatment in the community." Dkt. 62 at 2; *see also* Dkt. 63; Dkt. 64; Dkt. 65. On February 18, 2021, the Court held a hearing on the motion. *See* Minute Entry (Feb. 18, 2021). At the hearing, Shepard stated that he was "truly sorry" for his crimes. Hrg. Tr. (Rough at 37). He said that, if released, he planned to "sit[] in [his] little easy chair and watch[] television" and that, "[a]s far as young girls go, there won't be none in [his] life." Hrg. Tr. (Rough at 37–38). The motion is now ripe for decision.

## ANALYSIS

Until 2018, the Bureau of Prisons ("BOP") wielded "exclusive power over all avenues of compassionate release." *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). "BOP used this power sparingly, to say the least." *Id.* In 2018, as part of the First Step Act's larger package of criminal justice reforms, Congress amended the compassionate release statute to allow a defendant, after exhausting his remedies with the BOP, to petition a court directly for modification of his sentence. *See* 18 U.S.C. § 3582(c)(1)(A). This provision, titled "Increasing the Use and Transparency of Compassionate Release" in the bill, *see United States v. Johnson*, 464 F. Supp. 3d 22, 25 (D.D.C. 2020) (quoting First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018)), was intended to "expand[]" and "expedite[]" compassionate release, according to one of its co-sponsors, *see Brooker*, 976 F.3d at 233 (quoting 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018) (statement of Sen. Ben Cardin)).

A defendant seeking release under the revised § 3582(c)(1)(A) "bears the burden of establishing that he is eligible for a sentence reduction." *United States v. Demirtas*, No. 11-cr-356, 2020 WL 3489475, at *1 (D.D.C. June 25, 2020). Before ordering a defendant's release, a court must answer three questions. First, the court must consider whether the defendant has

exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, it must consider whether "extraordinary and compelling reasons warrant" release. *Id.* Third, the court must consider whether release would be consistent with the sentencing "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* In conducting this inquiry, the Court must ensure that any modification of sentence "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The Court will consider each of the three requirements in turn.

**A.      Exhaustion of Administrative Remedies**

A court cannot modify a sentence under the compassionate release statute until "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Decisions in this district have uniformly held, however, that the exhaustion requirement is not jurisdictional. *See United States v. Queen*, No. 17-cr-58, 2020 WL 3447988, at *2 (D.D.C. June 24, 2020).

The government initially argued that Shepard had failed to exhaust administrative remedies because his request to the BOP lacked sufficient specificity as to the reasons supporting his release. Dkt. 59 at 20–25. Later, however, the government reversed course and conceded that Shepard had exhausted. Dkt. 62 at 1. Regardless of the government's concession, the Court concludes that Shepard has exhausted his administrative remedies. Shepard submitted a request for compassionate release to the warden of FCI Butner Low, where he is incarcerated, on June 29, 2020. Dkt. 54 at 22. BOP formally denied the request on July 13, 2020. *Id.* As such, far

more than thirty days lapsed between the warden's receipt of the request and the filing of Shepard's motion in this Court on January 8, 2021.

For present purposes, the Court accepts the government's contention that it is possible that a timely administrative request for release might nonetheless fail to satisfy the exhaustion requirement if it does not give BOP fair notice of the reasons underlying the request. But this is not such a case. Shepard asks the Court to grant his release based on his advanced age, his declining health, and his risk factors for contracting severe COVID-19. Dkt. 54. He presented those same grounds for release to the warden. Dkt. 61 at 2. His administrative request sought release "in light of the extraordinary and compelling COVID-19 pandemic, as well as his age, gender[,] and health," in addition to the high number of COVID-19 cases that were active at Butner Low at the time of his request. *Id.* Particularly in a context in which many inmates submit their administrative requests *pro se* and in which health concerns may evolve on a day-to-day basis, Shepard's request was more than detailed enough to satisfy the statutory exhaustion requirement.

**B.      Extraordinary and Compelling Reasons**

Next, the Court must consider whether "extraordinary and compelling reasons" support Shepard's release. 18 U.S.C. § 3582(c)(1)(A). The law provides no definition of this phrase and instead allows "applicable policy statements issued by the Sentencing Commission" to refine the statutory standard. *Id.*; *see also* 28 U.S.C. § 994(t) (directing the Sentencing Commission to develop policies as to what circumstances "should be considered extraordinary and compelling reasons for sentence reduction"). The Sentencing Commission's policy statement on compassionate release, which was promulgated before the First Step Act, includes "application notes" that list four "circumstances" that qualify as "extraordinary and compelling." U.S.S.G.

5

§ 1B1.13 cmt (1).  First, the policy statement provides for release based on the "Medical Condition of the Defendant."  U.S.S.G. § 1B1.13, cmt. (1)(A).  Release is appropriate if the defendant is "suffering from a terminal illness."  U.S.S.G. § 1B1.13, cmt. (1)(A)(i).  Release may also be appropriate if the defendant is "(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process," but these non-terminal conditions provide a basis for release only if the relevant condition is irreversible and "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility."  U.S.S.G. § 1B1.13, cmt. (1)(A)(ii).

Second, the policy statement permits release based on "Age of the Defendant."  U.S.S.G. § 1B1.13, cmt. (1)(B).  To qualify under this provision, the defendant must [1] be "at least 65 years old; . . . [2] [be] experiencing a serious deterioration in physical or mental health because of the aging process; and [3] [have] served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  *Id.*

The policy statement's third basis for release, not relevant here, pertains to family circumstances, such as a situation in which the caregiver for a defendant's minor children is incapacitated.  U.S.S.G. § 1B1.13, cmt. (1)(C).  And the fourth provision is a catchall for "Other Reasons" to be "[d]etermined by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13, cmt. (1)(D).

Of course, neither the Sentencing Commission in promulgating its policy statement nor Congress in passing the First Step Act could foresee the COVID-19 pandemic.  And yet, over the past year, courts have been inundated with compassionate release requests from prisoners who argue that their health conditions leave them particularly at risk for severe illness or death if

exposed to the virus while in prison, where people are especially vulnerable to the virus despite the various protective measures that BOP has put in place. *See* Dkt. 54 at 12–17 (recounting, in the context of Shepard's motion, the history of COVID-19 spread in federal prisons). Although none of the grounds for release set forth in the policy statement is a neat fit for risks associated with the pandemic, the courts have overwhelming concluded that they have discretion to grant compassionate release based on serious risks to life or safety associated with the virus, although they have taken slightly divergent paths to reach that result.

Many decisions, including decisions by several judges in this district, have concluded that the policy statement remains binding, but that, in light of the First Step Act, the catchall provision can be read to grant authority to identify additional reasons warranting release not only to the Director of the Bureau of Prisons but also to the courts. *See, e.g.*, *United States v. Fields*, No. 19-cr-0048, 2021 WL 780738, at *2 (D.D.C. Mar. 1, 2021) (holding that "the COVID-19 pandemic falls under such an 'other reason' that may present an 'extraordinary and compelling reason' for a sentencing reduction" within the meaning of the catchall provision); *United States v. Robinson*, No. 16-cr-153-2, 2021 WL 736732, at *2 (D.D.C. Feb. 25, 2021); *United States v. Douglas*, No. 10-cr-171-4, 2021 WL 214563, at *4 (D.D.C. Jan. 21, 2021); *United States v. Brooks*, No. 18-cr-29, 2020 WL 7186157, at *2 (D.D.C. Dec. 7, 2020) ("In light of the COVID crisis, . . . courts have invoked [the catchall provision], which acknowledges that reasons 'other than, or in combination with, the reasons described' in [commentary sections (1)(A), (B), and (C) of the policy statement] may present extraordinary and compelling circumstances.").

Other decisions, including recent decisions from four circuits, have held that because the policy statement predated the First Step Act and is directed exclusively at motions filed by the BOP, it is not "applicable" to motions filed by defendants under 18 U.S.C. § 3582(c)(1)(A). *See*

*Brooker*, 976 F.3d at 237; *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13"); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020) (Until the Guidelines are revised, "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release."); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020).  In addition to the reference to the "Director of the Bureau of Prisons" in U.S.S.G. § 1B1.13, cmt. (1)(D), the policy statement also provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons," U.S.S.G. § 1B1.13, cmt. (4), which these courts have read as indicating that the policy statement is "applicable" only to the BOP and not the courts, *see Brooker*, 976 F.3d at 235–36.  As the Second Circuit put it: "[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and "[n]either Application Note 1(D), nor anything else in the now-outdated version of [U.S.S.G.] § 1B1.13, limits the district court's discretion." *Id.* at 237.  To hold otherwise, the Second Circuit concluded, would fail to recognize that "Congress clearly did not view this—a break with over 30 years of procedure—as a minor or inconsequential change." *Id.* at 235.

The difference between these two lines of precedent is seemingly inconsequential for compassionate release motions based on COVID-19.  A court concluding that it can consider such a motion under U.S.S.G. § 1B1.13, cmt. (1)(D) ends up in the same place as a court concluding that it can do so because the policy statement does not apply.  Both courts may grant release based on serious COVID-19 risks "after considering the factors set forth in section

8

3553(a) to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A). But the distinction takes on more meaning in a case in which the defendant seeks release based on age or family circumstances or a medical condition not associated with a once-in-a-century pandemic. In those cases, a court taking the position that the policy statement is still applicable would need to apply U.S.S.G. § 1B1.13, cmt. (1)(A), (B), or (C), whereas a court taking the position that the entire policy statement is inapplicable would have broader discretion to determine what types of medical conditions or age-related declines qualify as "extraordinary and compelling."

Although the D.C. Circuit has yet to address this question, the Court is persuaded by the analysis adopted by the four courts of appeals that have considered the issue and, thus, concludes that it is not bound by the existing policy statement, U.S.S.G. § 1B1.13, in determining what qualifies as "extraordinary and compelling reasons warrant[ing]" release. 18 U.S.C. § 3582(c)(1)(A). Because the policy statement by its own terms applies only to motions filed by the BOP, it is not "applicable" to compassionate release motions that defendants file directly with the Court. At the same time, however, the Court will look to the application notes as highly persuasive (albeit not binding) authority when considering motions based on medical conditions, age, or family circumstances. These "outdated guidance documents remain helpful in defining a vague standard." *United States v. Minicone*, No. 5:89-cr-173, 2021 WL 732253, at *2 (N.D.N.Y. Feb. 25, 2021) (internal quotation and citation omitted). And relying on the established standards is preferable to conducting an unmoored inquiry into what qualifies as "extraordinary and compelling."

With that understanding of the statutory standard in mind, the Court turns to considering whether Shepard has carried his burden of demonstrating that "extraordinary and compelling reasons warrant" his release. In his motion, Shepard argues that he should be released on two

9

separate grounds, although his briefing at times blurs the line between the two arguments. First, Shepard argues that his age (combined with his poor health) is an extraordinary and compelling reason warranting his release, under U.S.S.G. § 1B1.13, cmt. (1)(B). Dkt. 54 at 22. As explained above, to qualify under this provision, the defendant must be "at least 65 years old; . . . experiencing a serious deterioration in physical or mental health because of the aging process; and [have] served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. (1)(B). Shepard is 77 years old and has served well over 10 years of his sentence, and thus he satisfies at least two of the policy statement's three requirements for age-based extraordinary and compelling reasons. As for his "serious deterioration in physical or mental health because of the aging process," Shepard argues that he suffers from a bevy of health problems, including skin cancer, obesity, high blood pressure, and lung problems associated with his history of smoking. *Id.* at 22–29.

Shepard's primary argument, however, is that those same health conditions, combined with his age, put him at extreme risk from COVID-19. *Id.* According to CDC data, a 77-year-old who contracts COVID-19 is approximately eight times more likely to be hospitalized and a staggering 187 times more likely to die than someone between the ages of 18 and 29. *See* Ctrs. for Disease Control and Prevention, *Risk for COVID-19 Infection, Hospitalization, and Death by Age Group* (last updated Feb. 18, 2021), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html. Shepard argues, "when taken together, his advanced age and comorbidities combine and reinforce each other to render Covid-19 a uniquely dangerous threat to [him] and provide this Court with extraordinary and compelling reasons to grant his release." Dkt. 54 at 29–30.

In response, the government concedes that Shepard "meets the criteria of U.S.S.G. § 1B1.13, cmt. (1)(B), related to his age" and has thus "demonstrated an extraordinary and compelling reason for release." Dkt. 59 at 26. In particular, the government points to Shepard's enlarged prostate, high cholesterol, high blood pressure, and arthritis.[1] *Id.* With respect to Shepard's cancer, the government reports that Shepard "had a biopsy in 2012 for a lesion on his left shoulder, which was identified as malignant melanoma, and it appears that defendant had surgery and treatment with interferon." *Id.* Then in December 2020, shortly before filing his motion, Shepard "identified skin lesions that he reported were similar to his previous cancerous lesion" and "had a biopsy and excision of at least one of the new lesions." *Id.* In addition, "BOP has classified [Shepard] as Care Level 3, the designation for individuals at BOP receiving 'unstable, complex chronic care.'" *Id.* In light of this concession, the government argued that the Court need not reach the separate question of whether Shepard had also shown extraordinary and compelling reasons for his release in light of the pandemic. *Id.* at 28.

As an initial matter, the Court concludes that Shepard has not shown extraordinary and compelling reasons based on the pandemic. His age combined with his other risk factors might otherwise merit his release, but on the day that the Court held oral argument in the case, Shepard received his first dose of the COVID-19 vaccine. *See* Minute Entry (Feb. 18. 2021); Hrg. Tr. (Rough at 8–9). Overall, BOP has now fully vaccinated 576 staff members and 486 inmates at Butner FCC. *See* COVID-19, Federal Bureau of Prisons (last visited Mar. 3, 2021),

---

[1] The parties in their briefs list various other maladies with which Shepard has been diagnosed, using technical terms that can make the conditions sound rather dire. The Court's research, however, reveals that Shepard's "[i]mpacted cerumen," Dkt. 54 at 29, is excessive earwax and his "allergic rhinitis," Dkt. 59 at 26, is hay fever. Needless to say, earwax is neither extraordinary nor compelling.

11

https://www.bop.gov/coronavirus.  When providing emergency use authorization for the first two COVID-19 vaccines, the Food and Drug Administration reported that in clinical trials, both vaccines were roughly 95 percent effective at preventing infections, and only one person in the trials had a severe case.[2]  Given that Shepard received his first dose of the vaccine about two weeks ago (and, presumably, will receive his second dose in the near future), he cannot show that he needs to be released from prison to protect him from risks associated with COVID-19.

The question, then, is whether Shepard has demonstrated extraordinary and compelling reasons supporting his release based on his advanced age, as Shepard and the government agree he has.  As an initial matter, the Court concludes that it is not bound by the government's concession.  Compassionate release is a discretionary power, and the Court will not grant release unless it independently finds that the statutory standard is satisfied.  The Court agrees with the parties in at least certain respects.  The Court accepts the parties' reliance on U.S.S.G. § 1B1.13, cmt. (1)(B) and, even though that provision is not binding in the present circumstances, the Court concludes that it provides a sensible framework for evaluating whether age-related circumstances constitute extraordinary and compelling reasons for release.  Of course, the Court also agrees that Shepard is over age 65 and has served more than 10 years of his sentence.  The only question under the policy statement, then, is whether Shepard "is experiencing a *serious deterioration* in

---

[2] *See* Food and Drug Admin., *FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine* (Dec. 11, 2020), https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19; Food and Drug Admin., *FDA Takes Additional Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for Second COVID-19 Vaccine* (Dec. 18, 2020), https://www.fda.gov/news-events/press-announcements/fda-takes-additional-action-fight-against-covid-19-issuing-emergency-use-authorization-second-covid.

physical or mental health because of the aging process." U.S.S.G. § 1B1.13, cmt. (1)(B) (emphasis added).

What constitutes a "serious deterioration" admits of some ambiguity. But the text and structure of the policy statement provide additional clues about the meaning of the phrase. Most obviously, the section covering release based on age, U.S.S.G. § 1B1.13, cmt. (1)(B), is separate from the section covering release based on medical conditions, U.S.S.G. § 1B1.13, cmt. (1)(A). This indicates that the deterioration required for release based on age need not rise to the level of a medical condition that would independently merit release, or else the age-based provision would be surplusage. Likewise, although both the medical and age provisions include similar language about deterioration based on age, they pair that requirement with different additional requirements. Under the medical provision, a defendant who shows deterioration based on age must also show that this deterioration is irreversible and "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13, cmt. (1)(A). By contrast, under the age provision, the defendant must show that he is at least 65 and has served at least 10 years or 75 percent of his sentence, but there is no requirement that his physical or mental deterioration diminishes his ability to provide self-care. U.S.S.G. § 1B1.13, cmt. (1)(B). Again, this indicates that the "deterioration in physical or mental health because of the aging process" required under U.S.S.G. § 1B1.13, cmt. (1)(B) is something less than the type of deterioration that would qualify a defendant for medical release. Nevertheless, the deterioration under the age provision must be "serious."[3] *Id.*

---

[3] Because Shepard was 64 at the time of sentencing, his aging in prison was a foreseeable consequence of imposing a 30-year sentence. Under the policy statement, however, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, cmt. (2).

13

Caselaw provides some further guidance. Although most recent court decisions on compassionate release have dealt with the pandemic, several decisions from both before and during the pandemic have dealt with requests for release under the First Step Act based on the age provision of the policy statement. In a case on which the government relied in conceding that Shepard had shown extraordinary and compelling reasons, the Southern District of California found extraordinary and compelling reasons for release under U.S.S.G. § 1B1.13, cmt. (1)(B) based on circumstances similar to those in this case. *See United States v. Mondaca*, No. 89-cr-0655, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020). The defendant in that case, like Shepard, was 77 years old and had an enlarged prostate. *Id.* The defendant also had degenerative disc disease and a decrease in memory. *Id.* Two years prior to seeking compassionate release, he had been placed on suicide watch after he was the victim of an assault and had "withdrawn to his cell out of fear of interaction with other inmates." *Id.* (quotation omitted). Although Shepard does not contend that he has become "increasingly vulnerable to victimization within the correctional facility because of his age," *id.*, he has had cancer, and it is possible that his cancer has now reoccurred, *see Minicone*, 2021 WL 732253, at *4 (granting compassionate release in part because 72-year-old defendant had "endured seven surgeries to remove cancerous skin lesions on various parts of his body" while in prison). The Court cannot, of course, measure the comparative health of Shepard and Mondaca with any precision, but the health challenges that Shepard faces appear similar to those that the *Mondaca* court found to constitute a "serious deterioration in physical or mental health." U.S.S.G. § 1B1.13, cmt. (1)(B).

Other courts, however, have set the bar somewhat higher for age-based compassionate release under U.S.S.G. § 1B1.13, cmt. (1)(B), either denying motions from defendants with conditions that are similar to Shepard's or granting motions only where the defendant had

14

suffered more severe deterioration.  *See, e.g.*, *United States v. Gutierrez*, No. 05-cr-0217, 2019 WL 1472320, at *2 (D.N.M. Apr. 3, 2019) (denying compassionate release to a 78-year-old inmate with a prostate "problem that requires him to urinate every two hours," as well as cataracts and broken teeth); *United States v. Gross*, No. 2:04-cr-32, 2019 WL 2437463, at *3 (E.D. Wash. June 11, 2019) (denying compassionate release where the defendant's deteriorating health resulted from a detached retina, rather than the aging process); *United States v. Shmuckler*, No. 1:11-cr-344, 2019 WL 6257959, at *1 (E.D. Va. Nov. 22, 2019) (denying compassionate release to 76-year-old defendant who suffered from "a crimp in his aortic artery; macular degeneration; hypertension; esophageal reflux; mycobacterium fortuitive infection; hyperthyroidism; prostatic hypertrophy; and hyperlipidemia); *United States v. Vasquez*, No. 08-cr-00065, 2021 WL 681174, at *2 (E.D.N.Y. Feb. 22, 2021) (granting compassionate release to "a 65-year-old diabetic" defendant with "advanced heart disease" requiring an implanted defibrillator and pacemaker); *United States v. Clyne*, No. 1:16-cr-115, 2019 WL 3292349, at *1 (D. Idaho July 22, 2019) (granting compassionate release to 72-year-old defendant who had suffered "several heart attacks, had a pacemaker implanted, and [could] only walk with the aid of a walker"); *United States v. Wong Chi Fai*, No. 93-cr-1340, 2019 WL 3428504, at *3 (E.D.N.Y. July 30, 2019) (granting compassionate release to 65-year-old defendant with severe thyroid cancer).

Although it presents a difficult question, the Court concludes that Shepard has not (at least at this time) shown "serious deterioration in physical or mental health because of the aging process" that would rise to the level of an extraordinary or compelling reason warranting his release.  U.S.S.G. § 1B1.13, cmt. (1)(B).  It is possible that with more information about the severity of his current conditions, the Court would reach a different conclusion.  As the record

15

stands now, however, it appears that Shepard's most severe medical condition is his skin cancer. It is unclear, however, whether his cancer is currently in remission, given the unknown results of his recent biopsy, and whether his cancer has progressed beyond a localized (and treatable) melanoma. His enlarged prostate is a common condition in older men, and there is no indication in the record that it is currently anything more than a nuisance. The Court might reach a different conclusion if Shepard were to demonstrate that his cancer has spread or is life threatening or that his prostate condition is more severe than the Court currently understands it to be. His borderline obesity, high blood pressure, and smoker's cough may have been risk factors for COVID-19, but now that he has received the vaccine, those conditions by themselves do not merit release from prison. Likewise, his laundry list of other minor ailments, even in combination, are not at a level where the Court would call them signs of serious deterioration. Shepard has thus—at least at this time—failed to demonstrate extraordinary and compelling reasons justifying his release.

**C.    Sentencing Factors**

Because Shepard has failed to show extraordinary and compelling reasons justifying his release, the Court need not reach the question of whether the sentencing factors favor his release. But even if the Court had found Shepard's circumstances extraordinary and compelling, the Court would still deny his motion on the ground that the sentencing factors do not support his release. (It is on this ground that the government opposes Shepard's motion.) The factors for the Court to consider include "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need for the sentence imposed to "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense;" "to afford adequate deterrence to criminal conduct;" and "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a).

Shepard primarily argues that "his 30-year sentence overstates the seriousness of his convictions."  Dkt. 54 at 31.  This is because his "sentence was actually driven by his arguably less serious offense—possession of child pornography and the corresponding guideline § 2G2.2, which recommended 30 years to life."  *Id.*  Shepard argues that the child pornography guideline is overly harsh, and many judges and commentators have long agreed with that general assessment.  *See, e.g.*, *United States v. Dorvee*, 616 F.3d 174, 188 (2d Cir. 2010) (describing § 2G2.2 as an "eccentric Guideline of highly unusual provenance" that in a given case may be "manifestly unjust"); Brent E. Newton, *A Partial Fix of a Broken Guideline: A Proposed Amendment to Section 2G2.2 of the United States Sentencing Guidelines*, 70 Case W. Rsrv. L. Rev. 53 (2019) (noting that 69.1 percent of defendants sentenced under § 2G2.2 receive downward variances or departures).  The Court is unconvinced, however, that § 2G2.2 was what determined Shepard's 30-year sentence in this case.  At the sentencing, Judge Urbina imposed a sentence above the guidelines range because he found the facts of this case so shocking, calling it the worst he had ever seen in his years on the bench.  *See* Dkt. 51 at 27.  Even setting aside the child pornography, the facts of the case suggest that Shepard traveled to the District of Columbia with sleeping pills and fruit drinks that he intended to use to drug and rape a child.  Shepard also admitted that he had sexually abused his daughter when she was a child, showing a pattern of sexually abusive behavior that stretched over decades.  Given the shocking nature of Shepard's crime, his sentence was appropriate, and he has not yet served enough of that sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a).

The Court is also concerned about the protection of the community.  Shepard is now 77 years old, and, at that advanced age, the danger that he may have posed when he went to prison more than thirteen years ago has likely decreased.  But given the fact that Shepard committed the offenses for which he was convicted at age 63, the Court is unpersuaded that his advanced age alone provides a sufficient guarantee that his release would not endanger children.

Shepard's claim that prisoners in his age group who are released have a zero percent recidivism rate, Dkt. 54 at 40–41, is unpersuasive.  The figure is based on a report in which only ten prisoners over age 70 were released—an insufficient sample size upon which to base such an important decision about community safety.  *See* OIG, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, at 40 (2016).  Nor is the Court persuaded that Shepard could safely be released on the basis of the prison psychologist's report indicating that he "is scored as low risk to sexually reoffend" and that "outpatient treatment in the community is completely acceptable." Dkt. 62 at 2.  Here again, this determination appears to have been based almost entirely on Shepard's age.  But Shepard's decades-long pattern of behavior and his criminal activities well into his sixties suggest that he may pose a greater risk to the community than other inmates in his age group.  The sentencing factors thus support his continued incarceration to protect the public.  18 U.S.C. § 3553(a).

The Court will, therefore, deny Shepard's motion for compassionate release.  The Court recognizes, however, that Shepard is well into his older years and faces significant health issues.  Perhaps in the future, once he has served more of his sentence, he will be able to present a stronger motion for release based on his health as it stands at that time.  The Court will therefore deny the motion but will do so without prejudice.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Shepard's emergency motion for compassionate release, Dkt. 54, is **DENIED** without prejudice.

**SO ORDERED**.

                                          <u>/s/ Randolph D. Moss</u>
                                          RANDOLPH D. MOSS
                                          United States District Judge

Date:  March 5, 2021